**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                 No. CR 08-1981 JB

CALBERT JAMES PETE,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Appeal from the Magistrate's Detention Order, filed December 5, 2008 (Doc. 15)("Appeal").  The Court held a hearing on December 15, 2008.  The primary issue is whether the Court should release Defendant Calbert James Pete on conditions.  Because the Court concludes that Pete poses a risk of danger to the community and is a flight risk, and because the Court concludes that there are no conditions of release, or combination of conditions, that would adequately mitigate these risks, the Court will affirm the detention order.

**FACTUAL BACKGROUND**

This appeal arises from Pete's detention on charges that he assaulted a Navajo law enforcement officer.  Pete was born in Richfield, Utah and now resides in Fruitland, New Mexico.  He is twenty-six years old, and has four children, and his common-law wife is currently expecting a fifth child.  He has been self-employed for the last five years doing bead work that earns approximately $850.00 per month.  Pete has recently done drywall work as well.

Pete also has an extensive criminal history.  Over the last eight years, he has had numerous run-ins with law enforcement.  Many of the cases brought against him were dismissed, and there are

others for which no disposition is available, but Pete nonetheless has several convictions, including convictions for burglary, battery, and reckless driving.  See Prior Criminal Record at 1-2, filed December 10, 2008 (Doc. 19)("Record").  Pete also has an active warrant.  See id. at 2.

On February 19, 2008, Navajo law enforcement officers responded to a call.  They encountered Pete, who was intoxicated.  See Transcript of Hearing at 4:3-7 (taken December 15, 2008)(Gorence)("Tr.").[1]  The officers placed Pete under arrest.  During the course of the arrest, a Taser was used on Pete twice.  While being placed in a vehicle, he allegedly kicked Navajo Officer Felicia Freeman in the face.  See id. at 4:11-15 (Gorence).  One of Freeman's nostrils was broken, and she is contemplating additional surgery.  See id. at 11:18-25 (Wang).

## PROCEDURAL BACKGROUND

On August 26, 2008, a federal grand jury returned an indictment charging Pete with violating 18 U.S.C. §§ 1153 and 113(a)(6) -- crime in Indian Country and assault resulting in serious bodily injury.  See Indictment, filed August 26, 2008 (Doc. 2).  On November 13, 2008, the Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge, held a detention hearing and found that Pete had a "criminal history with poor performance while on supervision, the crime charged is a crime of violence and the presumption has not been overcome."  Chief Judge Garcia entered an Order of Detention that same day.  See Order of Detention Pending Trial, filed November 13, 2008 (Doc. 10)("Order of Detention").  Pete appealed the Order of Detention and requests that the Court vacate the Order of Detention and set conditions of release pursuant to 18 U.S.C. §§ 3141-3156. See Appeal at 1.

Pete requests that the Court release him to the La Pasada halfway house during the pendency

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

of this case. See id. ¶ 3, at 1. According to Pete, release would allow him to earn an income that would alleviate the burdens his household faces. See id. ¶ 2, at 1. Additionally, Pete states that release to the halfway house would allow his problems with alcohol to be addressed, while providing him the opportunity to more meaningfully assist in his defense. See id. ¶ 3, at 1. Pete also states that he understands the consequences flight would have and that he will abide by any conditions of release the Court imposes on him. See id. ¶ 4, at 2.

The United States opposes Pete's appeal and contends that the Court should affirm the Order of Detention. See United States' Response to Defendant's Appeal from the Magistrate's Detention Order Filed on December 5, 2008 at 1, filed December 10, 2008 (Doc. 18). The United States notes that the Probation Officer recommended detention and that Freeman, the victim in this case, also opposes Pete's release to La Pasada. See id. ¶¶ 3, 5, at 2. The United States also maintains that Pete has a lengthy criminal record, including failures to appear, probation violations, and a current outstanding warrant. See id. ¶ 4, at 2.

## LAW REGARDING PRETRIAL DETENTION

Under the Bail Reform Act of 1984, pretrial detention is required if the judicial officer determines "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In evaluating whether there are conditions of release that will satisfy these requirements, a court is to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including–
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Id. § 3142(g).

> In a case involving a crime of violence
>
> a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if . . . the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed.

Id. § 3142(e)(1).  Subsection (f)(1) includes a crime of violence as one of the predicate offenses that can give rise to the rebuttable presumption.  See id. § 3142(f)(1)(A).

## **ANALYSIS**

Pete appeals from Chief Judge Garcia's Order of Detention.  The Court believes that Chief Judge Garcia was correct to impose detention and will affirm Chief Judge Garcia's ruling.  Because Pete has been previously convicted of a crime of violence, and this case involves a crime of

violence, there is a rebuttable presumption that no condition or combination of conditions will ensure the safety of the community or Pete's appearance. Pete has not carried his burden of overcoming this presumption. Pete has a long history of criminal behavior and has demonstrated unwillingness in the past to abide by conditions of release and appear for hearings. The Court will therefore affirm the Order of Detention.

**I.     THERE IS A PRESUMPTION THAT DETENTION IS REQUIRED.**

Among Pete's previous convictions is at least one conviction for a crime of violence. See Record at 1 (listing a battery charge on June 10, 2006, resulting in a conviction and 60 days probation). The current case also involves a crime of violence. See Indictment (charging assault resulting in serious bodily injury). Accordingly, the rebuttable presumption that no condition of release, or combination of conditions, will assure Pete's appearance and will ensure the safety of the community, applies. See 18 U.S.C. §§ 3142(e) & 3142(f)(1)(A).

**II.    RISK OF FLIGHT.**

Pete promises to abide by all of the conditions of release that the Court imposes. Pete states that he understands and appreciates the serious consequences of flight and the effect that it would have on his ability to defend himself on these charges. At the hearing, Robert J. Gorence, Pete's attorney, also emphasized that Pete was a United States citizen from the American Southwest and that he needed to work to help support his family. See Tr. at 6:13-23 (Gorence). Despite these contentions, the Court believes that Pete is a flight risk. While the Court is not concerned with Pete fleeing the country, for instance, the Court is concerned that Pete will not appear as required for court hearings and that he might return home. His record indicates at least one charge for failure

to appear, and at least one recent instance of failing to comply.[2] Against this backdrop, the Court cannot conclude that Pete's assurances are sufficient to overcome the rebuttable presumption of flight here.

### III.     DANGER TO THE COMMUNITY.

More importantly, Pete has not overcome the presumption that no conditions the Court could impose would reasonably ensure the safety of the community. Pete has a substantial track record of violent and dangerous offenses, including convictions for burglary, resisting/evading/obstructing an officer, battery, and reckless driving. See Record at 1-2. Pete also has a pending charge for driving under the influence of intoxicating liquor and has had numerous other arrests and charges brought against him. See id. In total, Pete has been arrested and charged with one or more crimes nearly twenty times. These convictions and arrests all occurred over the span of eight years. This history gives the Court considerable concern whether it could impose any conditions of release that would provide reasonable assurance of the safety of the community.

At the hearing, Mr. Gorence focused on the circumstances of the present offense. Mr. Gorence noted that there is no allegation that Pete used a weapon during the alleged offense. See Tr. at 5:11-13 (Gorence). Mr. Gorence also contended that there is some expectation of difficulties in arresting an intoxicated person and that the alleged conduct "just catches the edge" of the statute's scope. Id. at 5:6. Mr. Gorence's arguments may somewhat mitigate the seriousness of Pete's alleged conduct, but do not eliminate it. According to the allegations, Pete assaulted a law enforcement during the course of an arrest, breaking the officer's nose and possibly requiring surgery. Moreover, Mr. Gorence's arguments cannot erase the fact that Pete has, in a short period

---

[2] The Record is not clear whether the failure to comply relates to release, probation, or some other similar restriction.

of time, amassed a long history of criminal behavior and violent conduct.

The Court is particularly concerned that a situation similar to the present offense might recur if Pete were to be released. The Court is concerned that Pete might leave La Pasada at some point and that the United States Marshals will have to be sent to take Pete into custody. That would end up endangering the safety of those officers and risks a repeat of the same events that are alleged in this case.

Pete's criminal conduct seems to often stem from his problems with alcohol. While there is a possibility that release to La Pasada and participation in an alcohol treatment program would keep Pete from drinking and from committing crimes during the pendency of this case, the possibility seems just that: a possibility. Pete has already had treatment for his alcohol problems before, apparently without success. See Tr. at 10:3-6 (Probation Officer). Without something more, it seems too speculative to the Court whether Pete would be able to live at La Pasada and avoid trouble. Weighed against his substantial criminal background and the disrespect for law enforcement that the current and past offenses indicate, the Court cannot conclude that Pete has overcome the rebuttable presumption. Because Pete has not been able to carry his burden, the Court considers Pete to be a flight risk and a danger to the community and will therefore deny the Appeal and affirm Chief Judge Garcia's Order of Detention.

Mr. Gorence said that Pete is entitled to one chance. See Tr. at 6:6-10 (Gorence). The Court has had some success pulling young men off the reservation -- away from friends and family who may influence the defendant to drink alcohol -- and placing them at La Pasada, where they then work, get tired, come home each night, and stay out of trouble. The Court gave considerable thought to whether Pete might be such a candidate. After careful reflection, however, the Court does not see anything in Pete's background that gives the Court an assurance that he will comply with

La Pasada's conditions. At the hearing, the Court inquired about Pete's work history, hoping that perhaps it could draw some assurance that he would be a good worker. Pete's spotty work history did not give the Court the assurance it sought and needs. In the end, Pete stands before the Court with a lengthy criminal history that includes violence, violations of conditions of release, alcohol problems, despite treatment, a weak employment history, and violence against police officers. The Court believes that to place Pete at La Pasada to help his family puts intuition, hunches, speculation, and hope before reason and the facts in the record. In the end, the Court fears that releasing Pete would put the public generally and the United States Marshals in particular at risk when he violates the terms of his release -- which is possible and, on the record, probable -- and the Marshals have to take him into custody. The Court cannot mitigate that risk to acceptable levels with any condition or combination of conditions.

**IT IS ORDERED** that the Defendant's Appeal from the Magistrate's Detention Order is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Lynn Wei-Yu Wang
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*


Robert J. Gorence
Marie Le Grand
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*